# BRADLEY LAW FIRM
### A PROFESSIONAL CORPORATION

MICHAEL D. BRADLEY
ATTORNEY AND COUNSELOR AT LAW

2 PARK AVENUE, 20TH FLOOR
NEW YORK, NY 10016
(212) 235-2089
FAX: (212) 878-8819
MBRADLEY@BRADLEYLAWFIRMPC.COM

June 23, 2023

**VIA ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall US Courthouse
Southern District of New York
40 Foley Square
New York, New York 10007

**MEMO ENDORSED:** Defendant Bennett's bail hearing will take place on Friday, June 30, 2023, at 2:00 p.m., in Courtroom 705 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York. The Government's opposition to Defendant Bennett's motion for pretrial release is due by Wednesday, June 28, 2023 at 5:00 p.m.

SO ORDERED.

*/s/ Paul G. Gardephe*

Paul G. Gardephe
United States District Judge
Dated: June 26, 2023

Re: *United States v. Jordan Bennett*
23 Cr. 204 (PGG)

Dear Judge Gardephe:

I represent Jordan Bennett in the above matter. I write to respectfully request that the Court schedule a bail hearing during the week of June 26, except the morning of Thursday, June 29, 2023, or as soon as possible thereafter pending the Court's availability. Mr. Bennett was arraigned before Magistrate Judge Jennifer Willis on April 20, 2023, at which time he consented to detention without prejudice (ECF Doc. No. 13). Mr. Bennett is charged in the following four counts of a twenty-count indictment: Count One: Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d); Count Eight: Accessory After the Fact to Assault with a Dangerous Weapon and Attempted Murder in Aid of Racketeering in violation of 18 U.S.C. § 3; Count Nineteen: Narcotics Conspiracy in violation of 21 U.S.C. § 841(b)(1)(C); and Count Twenty: Use, Carrying and Possession of a Firearm.

### I. Mr. Bennett Should Be Released on Bond with Conditions.

While there is a presumption of detention in this case because of the firearms charge in Count Twenty, Mr. Bennett should be released on bond pursuant to the Bail Reform Act (BRA), 18 U.S.C § 3142 and *United States v. Salerno*, 481 US 739 (1987). In this case, the statute creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(3). The presumption inquiry proceeds in two steps. At Step 1, this Court must consider whether the defense has met the very low burden of production to rebut the presumption. As set forth below, Mr. Bennett will present evidence that rebuts the presumption.

At Step 2, this Court must consider the presumption alongside all of the other § 3142(g) factors—even if the presumption has not been rebutted. Release is warranted in this case because there are numerous facts under § 3142(g) that both rebut the presumption of detention and demonstrate that there are conditions of release that will reasonably assure both Mr. Bennett's appearance in court and the safety of the community.

As the Supreme Court held in *Salerno*, "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. 18 U.S.C. § 3142(c)(1) (emphasis added).

Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention").

## II. The Statutory Presumption of Detention is Easily Rebutted and is Insufficient Alone to Warrant Detention.

Under the law, very little is required for a defendant to rebut the presumption of detention and therefore judges should find the presumption rebutted in most cases. The presumption may be rebutted by the defendant, who "bears a limited burden of production . . . by coming forward with evidence that he does not pose a danger to the community." *United States v. Mattis,* 963 F.3d 285, 290 (2d Cir. 2020) quoting *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Id.*

After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. "Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Mattis,* 963 F.3d at 290-91, quoting *United States v. Mercedes,* 254 F.3d at 436; *see also United States v. Jessup*, 757 F.2d 378, 380 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990) (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors). The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors supports release.

### A. Forbidden Considerations in a Presumption Case

A judge may not detain a defendant in a presumption case based solely on (1) evidence of the defendant's past dangerousness, or (2) the nature and seriousness of the crime charged, or (3) the weight of the evidence of the person's guilt.

2

First, even if the presumption is not rebutted, a judge is prohibited from detaining a defendant solely "based on evidence that he has been a danger in the past[.]" *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Instead, past dangerous conduct is relevant only to the extent that the government can prove—by clear and convincing evidence—that the defendant is "likely to continue to engage in criminal conduct undeterred [ ] by . . . release conditions." *Id.* Even when a defendant is charged with a serious crime or has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community.

Second, to rebut the presumption of dangerousness, a defendant need not "demonstrate that narcotics trafficking [or another serious crime] is not dangerous to the community." *Id.* at 706. Instead, this Court must analyze the defendant's individual characteristics under § 3142(g).

Third, the Court is forbidden from relying solely on the weight of the evidence of guilt to detain a defendant in a presumption case. A defendant is not required to "'rebut' the government's showing of probable cause to believe that he is guilty of the crimes charged." *Id.* This makes sense—a person's likelihood of guilt is analytically distinct from whether there are conditions of release that will reasonably assure the person's appearance or the safety of the community.

### B. The Presumption Should Be Viewed With Caution Because It Leads To High Rates Of Detention For Low-Risk Defendants.

Congress enacted the statutory presumption of detention in the Bail Reform Act of 1984 (BRA) to detain "a small but identifiable group of particularly dangerous defendants."[1] Indeed, Congress intended the presumptions to operate primarily on "*major* drug traffickers."[2] Congress emphasized that detention should be presumed only for these major drug traffickers, essentially drug kingpins.[3] "Congress considered at length arrestees' pretrial liberty interests, and concluded that the constitutional concerns with pretrial detention required a narrowly tailored statute to secure community safety and appearance in court."[4]

But the presumption of detention has not worked as intended, and federal pretrial detention rates have skyrocketed since the BRA was enacted, rising from 19% in 1985 to 75% in 2019.[5] A recent study by the Administrative Office of the Courts (AO) attributed this "massive

---

[1] S. REP. NO. 98-225, at 6.
[2] S. REP. NO. 98-225, at 20 (emphasis added).
[3] S. REP. NO. 98-225, at 7 (emphasizing that it was only for this "limited group of offenders that the courts [needed the] . . . power to deny release pending trial").
[4] Alison Siegler, Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis at 73 (2022), https://freedomdenied.law.uchicago.edu/; see also Bail, 51 GEO. L.J. ANN. REV. CRIM. PROC. 396, 407–08 (2022), (link to Westlaw) (last accessed June 23, 2023).
[5] *Pretrial Release and Detention: The Bail Reform Act of 1984*, BUREAU OF JUST. STAT. SPECIAL REP., at 2 (Feb. 1988), https://www.bjs.gov/content/pub/pdf/prd-bra84.pdf (Table 1) (18.8% of defendants detained pretrial in 1985); *Judicial Business: Federal Pretrial Services Tables*, ADMIN. OFF. U.S. COURTS ("AO Table"), Table H-14 (Sept. 30, 2019) https://www.uscourts.gov/sites/default/files/data_tables/jb_h14_0930.2019.pdf (74.8% of defendants detained pretrial in 2019); *see also* AO Table H-14A (Sept. 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/jb_h14a_0930.2019.pdf (61% detention rate *excluding immigration cases*).

increase"[6] in detention rates to the presumption of detention, especially as it is applied to low-risk defendants.[7] The study concludes that the statutory presumption in drug and firearm cases applies to *nearly half* of all federal cases and to 93% of drug cases.[8] It also confirms that the presumption increases the detention rate without advancing community safety. Rather than jailing the worst of the worst, the presumption over- incarcerates the lowest-risk offenders in the system, people who are stable, employed, educated, and have minimal to no criminal history.[9] When a low-risk individual is not facing a presumption, they're released 94% of the time.[10] Yet an identically low-risk individual in a presumption case is released just 68% of the time.[11] The 2022 Federal Criminal Justice Clinic ("FCJC") study demonstrated that the detention rate for defendants facing a presumption of detention is nearly 20 percentage points higher than that for defendants not facing a presumption, even though today "there is no evidence that people in presumption cases pose any greater risk than those in non- presumption cases."[12]

Additionally, the DOJ recently issued a new policy directive aimed at mitigating high detention rates in presumption cases. It instructs that "[p]rosecutors should not seek detention merely because the Bail Reform Act permits such an argument to be made or presumes that detention, based on the charges, is appropriate (as it does for many drug charges, *see* 18 U.S.C. § 3142(e)(3))."[13] The new directive requires prosecutors to do a "case- and defendant-specific" analysis in deciding whether to seek detention in all cases, including presumption cases.

Finally, high federal pretrial detention rates come with significant and wide-ranging "social and economic costs."[14] For example, the AO study explains that "[e]very day that a defendant remains in custody, he or she may lose employment which in turn may lead to a loss of housing. These financial pressures may create a loss of community ties, and ultimately push a defendant towards relapse and/or new criminal activity."[15] Indeed, the economic harms stemming from being detained pretrial persist for years: even three to four years after their

---

[6] Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 81 FED. PROB. 52, 61 (2017) (citing Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* (The Laura and John Arthur Foundation 2013), archived at Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 81 FED. PROB. 52, 61 (2017) (citing Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* (The Laura and John Arthur Foundation 2013), archived at https://perma.cc/8RPX-YQ78).
[7] *Id.* at 10-11.
[8] *Id*.
[9] *Id.* at 57.
[10] *Id.*
[11] *Id.*
[12] Siegler, *supra* note 4, at 158, 160 & fig.19, 153.
[13] U.S. Dep't of Just., Just. Manual § 9-6.100 (2023), https://www.justice.gov/jm/jm-9-6000- release-and-detention-pending-judicial-proceedings#9-6.100.
[14] Austin, *supra* note 6, at 61; *see also* Siegler, *supra* note 4, at 22 n.5, 61–72 (discussing the devastating consequences of high jailing rates on individuals, their families, their communities, and society, and citing studies in support).
[15] *Id.* at 53; *see also* Alexander M. Holsinger & Kristi Holsinger, *Analyzing Bond Supervision Survey Data: The Effects of Pretrial Detention on Self-Reported Outcomes*, 82(2) FED. PROB. 39, 42 (2018), archived at https://perma.cc/LQ2M-PL83 (finding that for people detained pretrial for at least three days, 76.1% had a negative job-related consequence and 37.2% had an increase in residential instability).

4

Detention Hearing, people released pretrial were still 24.9% more likely to be employed than those who were detained.[16]

### C. Rebutting the Presumption

To rebut the presumption, a defendant need only "introduce a certain amount of evidence contrary to the presumed fact." *United States v. Maxwell*, No. 20-CR-330 (AJN), 510 F.Supp.3d 165, 171 (S.D.N.Y. 2020), citing *United States v. Jessup*, 757 F.2d 378 at 380 ("[T]o rebut the presumption, the defendant must produce some evidence."); *United States v. Gamble*, No. 20-3009, 2020 U.S. App. LEXIS 11558 at *1–2 (D.C. Cir. Apr. 10, 2020) (holding that "[t]he district court erred in concluding that appellant failed to meet his burden of production to rebut the statutory presumption" regarding dangerousness because "appellant did 'offer some credible evidence contrary to the statutory presumption,'" including information that he had a job offer) (unpublished) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)).

This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707; *see also United States v. Wilks*, 15 F.4th 842, 846–47 (7th Cir. 2021) (explaining that the defense bears "a light burden of production" to rebut the presumption, "but the burden of persuasion always rests with the government"). Indeed, the presumption of detention is rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3))." *Dominguez*, 783 F.2d at 707 (emphasis added); *Jessup*, 757 F.2d at 384. Any "evidence of economic and social stability" can rebut the presumption. *Dominguez*, 783 F.2d at 707.

Notably, a defendant's ties to the community—standing alone—definitively rebut the presumption: "Where the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, as did [this defendant], the presumption contained in § 3142(e) has been rebutted." *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988). As long as a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the presumption of flight risk and dangerousness is definitively rebutted. *Dominguez*, 783 F.2d at 707 ("Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions...Once this burden of production is met, the presumption is 'rebutted.'" (quoting *Jessup*, 757 F.2d at 384)); *see also O'Brien*, 895 F.2d at 816 (finding presumption of flight risk rebutted by evidence of effectiveness of electronic monitoring ankle bracelet together with posting of defendant's home).[17] Importantly, as stated above, the government bears the burden of *persuasion* at all times. *Jessup*, 757 F.2d at 384; *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

---

[16] Will Dobbie et al., *The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108(2) AMER. ECON. REV. 201, 204 (2018), archived at https://perma.cc/X77W-DAWV.

[17] To rebut the presumption of flight risk, for example, a defendant does not "have to *prove* that he would not flee— *i.e.*, he would [not] have to *persuade* the judicial officer on the point. [Instead], he would only have to introduce a certain amount of evidence contrary to the presumed fact." *Jessup*, 757 F.2d at 380–81.

### III. The Presumption of Detention is Rebutted in this Case.

As detailed below, there is more than "some evidence" that Mr. Bennett will not flee or endanger the community if released. It is imperative that this Court follow the letter of the law by giving the presumption of detention "the low weight to which it is assigned by case law."[18] The defense has therefore rebutted the presumption in this case. Mr. Bennett has strong family and community ties to the New York area. He was born in the Bronx and has lived in New York his entire life. He is one of four children in a close-knit family. His mother and stepfather live in Middletown, NY. His sister Josette lives just a few minutes' drive away, and his sister Chanté lives in New York City. Although his brother Joseph lives in North Carolina, they too share a close bond. Mr. Bennett's family is very supportive of him and are willing to co-sign a substantial bond on his behalf, thereby providing an enormous incentive to return to court and to comply with any and all bond conditions. As his mother, Donna Fripp, writes, "Jordan comes from a very loving and supporting family that will stand by him one-hundred percent to keep his life on the right track."[19]

In support of detention, the government relies in part on Mr. Bennett's purported assumption of leadership of the alleged enterprise after a co-defendant's incarceration (Gov. Det. Memo at 10, 11). However, an alleged leadership role in a criminal enterprise, without more, does not suffice to mandate detention. *See e.g., United States v. Pirk*, 209 F.Supp.3d 557 (W.D.N.Y. 2016), *remanded on other grounds sub. nom. United States v. Jenkins*, 2022 WL 3138879 (2d. Cir 2022) ("there is no *per se* rule requiring the detention of a defendant pending trial who is charged in a racketeering conspiracy, and according to the government, played a leadership role in the criminal enterprise"). Rather, the court must engage in a "fact-intensive analysis" as with all detention decisions. *Id.*, citing *United States v. Ciccone*, 312 F.3de 535, 543 (2d. Cir. 2002).

Moreover, although Mr. Bennett has prior felony convictions, he has never fled from prosecution. In each of his prior cases, he returned to court as ordered. He has no warrant history or failures to appear. Nor has he any violations of parole or probation. Finally, he has been offered a non-criminal disposition to resolve his open matters.

### IV. Regardless of the Presumption, Mr. Bennett Must be Released Because There are Conditions That Will Reasonably Assure Appearance and Safety.

Regardless of whether this Court finds that the presumption of detention is rebutted, Mr. Bennett must be released because there are conditions that will reasonably assure the safety of the community and Mr. Bennett's appearance in court. The presumption of detention, on its own, is insufficient to justify detention. *Wilks*, 15 F.4th at 847 ("[A]n unrebutted presumption is not, by itself, an adequate reason to order detention."). Indeed, if the presumption alone could justify detention, there would have been no need for Congress to have specified "the weight of the evidence against the person" as a separate factor for the court to consider. The BRA requires

---

[18] Siegler, *supra* note 4, at 146.
[19] *See* Exhibit A - D. Fripp Letter of Support.

courts to weigh all the § 3142(g) factors in every case, even when the presumption has not been rebutted.[20]

A defendant cannot be detained unless a finding is made that no release conditions will reasonably assure the safety of the community and the defendant's appearance in court. Here, the government has not carried its high burden of proving by clear and convincing evidence that there are *no* release conditions that will reasonably assure the safety of the community. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Bennett's appearance in court. Thus, Mr. Bennett cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Bennett's appearance in court and the safety of the community:

***A Substantial Appearance Bond***: A $200,000 appearance bond, co-signed by the following three financially responsible sureties:

- Josette Plata – Mr. Bennett's sister. She is employed as an insurance advisory associate for a surgical hospital. She earns approximately $75,000 per year.
- Donna Fripp – Mr. Bennett's mother, with whom he will reside if released. She works as a senior administrative assistant at an international law firm, making $98,000 per year.
- Tatyanna Ramos – Mr. Bennett's partner for several years, who has known him since grade school. She is an assistant principal in Rosedale, NY, earning $86,000 per year.

***Home Confinement and Strict Pretrial Supervision***: If released, Mr. Bennett will reside with his mother and stepfather in Middletown, NY. He consents to any reasonable further conditions of release the Court deems necessary, such as electronic/GPS monitoring, seeking and maintaining employment, no contact with co-defendants, drug testing, home confinement, and the most stringent additional pretrial supervision conditions.

Finally, Mr. Bennett has been detained at Brooklyn MDC since his arrest on April 20, 2023. The horrors of confinement at MDC have been well-documented: seemingly interminable lockdowns, unhygienic conditions, commissary shortages, and so on. The deplorable conditions of confinement at MDC are perhaps the most powerful incentive for Mr. Bennett to return to court and to abide by any conditions of release the Court sets. Because there are conditions of release that will reasonably assure Mr. Bennett's appearance in court and the safety of the community, he should be released.

---

[20] S. REP. NO. 98-225, at 23, *as reprinted in* 1984 U.S.C.C.A.N. at 3206 ("Subsection (g) enumerates factors that are to be considered by the judicial officer in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of any other person and the community. Since this determination is made *whenever a person is to be released or detained under this chapter, consideration of these factors is required* . . . a court is expected to weigh all the factors in the case before making its decision as to risk of flight and danger to the community." (emphasis added)).

## V. Conclusion

For the foregoing reasons, Mr. Bennett respectfully requests that this Court find that the presumption favoring detention has been rebutted and release him with conditions. The defense thanks the Court for its consideration of this application.

Respectfully Submitted,

Michael D. Bradley
Attorney for Jordan Bennett

EXHBIT A

May 25, 2023

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
Thurgood Marshall US Courthouse
40 Foley Square
New York, NY 10007

Re:   Jordan Bennett

Dear Honorable Judge Paul G. Gardephe:

This letter is written by me, Donna L. Fripp, on behalf of my son, Jordan Bennett.

Jordan is a great son, brother, uncle, cousin and friend and I feel strongly about his future. Jordan is a person of good character. I realize that under the circumstances it might seem hard to believe, but it is indeed true. I know Jordan has had his ups and downs but I also know that he is a decent person at core and not a threat to society. Although he has made mistakes in the past, he is remorseful and I know if given the opportunity he will live his life as an upstanding and respectful citizen. Jordan has always been a respectful young man that would help out whenever needed and without hesitation. Jordan comes from a very loving and supporting family that will stand by him one-hundred percent to keep his life on the right track.

Respectfully yours,

*Donna L Fripp*

# EXHIBIT B

May 25, 2023

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
Thurgood Marshall US Courthouse
40 Foley Square
New York, NY 10007

Re:   <u>Jordan Bennett</u>

Dear Honorable Judge Paul G. Gardephe:

I was asked to write a character reference on behalf of Jordan Bennett and without hesitation, I agreed. I have known Jordan for over 10 years, when his mother and I became friends. Jordan is always a respectful and well-mannered individual. He is an overall good person.

Although he has made mistakes in the past, he is no longer that individual. Jordan has displayed nothing but growth. Jordan comes from a very large, loving and supportive family who wants and needs him home. Jordan is not a danger or threat to anyone.

Sincerely,

Carolyn Knight